Okay, so, counsels, is this Matt Adams? Yes. May it please the court, I'm Matt Adams with Northwest Immigrant Rights Project on behalf of the petitioner, Mr. Gaday. And I'll seek to preserve three minutes for rebuttal. In denying the application for withholding of removal, the immigration judge committed two critical errors that were directly related. And the first was the failure to acknowledge that the record compelled the conclusion that Mr. Gaday himself had been targeted for assassination when three men broke into his home where he lived alone in the middle of the night, went directly into his bedroom, and without saying anything, shot the man that they found there. Now, fortunately for Mr. Gaday, he was his friend who was visiting him, who was in his bedroom. And the board, nonetheless, upheld that finding and said that there is no clear error in the immigration judge's finding that the cartel targeted the applicant after the May 2017 home break-in because he was a witness to the cartel's murder of his friend in the applicant's house. But this finding ignores the fact that he was the original target of that attempted assassination. The record provides for no alternative basis to suspect that anyone but the petitioner was the intended target. And all of this directly relates to the next error, which was the immigration judge's failure to acknowledge that or to acknowledge his claim that he had been targeted on account of his family relationship. Instead, the immigration judge, again, concluded simply that he was targeted because he witnessed the murder in his home. Yet, in his testimony at the hearing and previously in his application for asylum and in his interview before the asylum officer, each time he had discussed how he was targeted because of his relationship to his cousin. And in the individual hearing, he explicitly testified when asked why he was targeted, because I was a cousin of my cousin. The immigration judge then asked him, well, how did they know that? Did they know you to be his cousin? And he confirmed, explaining how. And this is at page 168 in the record. So even as a pro se, as an unrepresented individual, he explicitly stated he was targeted on account of his family relationship. Yet the immigration judge failed to make any findings regarding whether he had been targeted on account of his relationship to his cousin. Now, the board then makes a clear error in stating, quote, the immigration judge was not required to accept the applicant's version of events, that is, that the cartel targeted him because of his relationship to his cousin, end quote. But it is not as if the immigration judge considered and rejected his version of events. Instead, the immigration judge ignored his claim. He ignored that he had stated that he was targeted because of his cousin. And as this court has said in Sagai Dock and other cases, immigration judges and the board are not free to ignore arguments raised by a party. And this was especially critical here because this was the basis for which the immigration judge denied him, his alleged failure to demonstrate that he was targeted on account of a protected ground. Now, the board belatedly attempts to cure that by engaging in fact-finding in the first instance. The board, in its decision, said that the petitioner's testimony was insufficient to sustain his burden. And that's page four of the record. However, the board is not entitled to engage in fact-finding. The regulations explicitly preclude the board from engaging in fact-finding, and that's at 8 CFR 1003 D34. And as respondent themselves acknowledge in their brief on page 32, the determination of the motivation of the persecutor is an issue of fact. And, of course, that's citing to the board's controlling precedent in matter of JBN. So here you had the board inappropriately stepping into the shoes of the immigration judge and making a determination on whether the petitioner's credible testimony demonstrated that he was, in fact, targeted because he was a cousin of his cousin. And, in fact, even if the board were empowered to engage in that fact-finding, that was an error. Counsel, let me ask you a question. Assume he was targeted because of his cousin. What would be the nexus to a protected ground? The protected ground would be on account of his family relationship to his cousin. That's what I wanted to ask you about. If the cousin spilled the beans to him about some cartel operations and the cartel wanted to get him out of the way because of that, is that persecution on account of a protected ground of family? No. I think if he were targeted because of knowledge he had about the cartel that could interfere with their operations, then the government could have responded, that's not a particular social group as defined by case law. But case law defines a person being targeted because of his family relationship as a quintessential particular social group. And in this case, we know that petitioner, through his credible testimony, had made clear that he never had any involvement with the cartel. And, in fact, that was what created the friction with his cousin in the first place, leading to his cousin to move out of his place. So at a minimum, it demonstrates there need to be additional fact-finding done by the immigration judge. But none of that fact-finding, in fact, occurred. And the other thing I'd point out is that in 8 CFR 1208.16b, the regulation makes clear that the testimony of an applicant, if credible, may be sufficient to sustain the burden of proof without corroboration. He was found credible. He was testified that he was targeted on account of his family relationship. And unlike an asylum claim, he need not demonstrate that he was targeted solely because of his family relationship. So he has this credible testimony that should have been sufficient. If it was not, pursuant to this court's controlling precedent in cases like Ren v. Holder, it would have been incumbent on the immigration judge to then provide notice to the applicant that he needed more than just that testimony, and providing the applicant with an opportunity to either submit the corroborating evidence or to explain why such corroborating evidence was not available. But, of course, none of this occurred. So at a minimum, you have the failure of the agency to even address his claim that he was targeted on account of his family relationship. And I'd like to turn now to his claim for protection under the Convention Against Torture. The only reason the immigration judge denied his claim for protection was because he found that there was not evidence to demonstrate that the government would acquiesce or consent to the cartel's actions targeting him. And, in fact, he said he relied on the fact that the petitioner testified that he had no problems with the government of Mexico. And so the immigration judge seized upon his response to this general and broad question about whether he had problems with the government of Mexico, but then ignored that a few minutes later the petitioner proceeded to testify that the police had actually attempted to grab him at the cartel's behest in order to turn him over to the cartel. And so you have the agency completely ignoring a critical fact that demonstrates acquiescence, actually more than acquiescence, direct collaboration by the local police with the cartel. And the board, again, does not explain how the immigration judge's opinion could be consistent with the fact that he had been targeted by the police. Instead, the board states, well, the immigration judge noted that police activity in the order. And it is true that in the beginning of the opinion, when summarizing the testimony, the immigration judge noted that he had gone to the police for help, the police had laughed at him and told him he better run, and then tried to chase him down. Yet, when analyzing the application for protection under the Convention Against Torture, the immigration judge ignored all that. All he focused on was his isolated statement saying he had no problems with the government of Mexico. There's no way for the agency to find that the government would not acquiesce or consent to the cartel's actions without ignoring those critical facts. Now, not only did they ignore the facts of his case, that the police had tried to help the cartel, but they, again, ignored the country conditions reports. And this is critical because the only basis he was denied was this finding that there would be no acquiescence or consent. And, again, the country conditions reports, and I note these country conditions reports were submitted by the government attorney. Our client was unrepresented at that point. And these are the reports from the Department of State making clear that the local law enforcement was involved with the cartels, and allowing the cartels to act with impunity, and at times collaborating with murders and disappearances of individuals. And, again, this court has made clear time and time again, we cited to Aguilar-Ramos v. Holder, that the failure of the immigration judge and the board to consider evidence of country conditions constitutes reversible error. He had multiple bases on which this court could determine that the record compels a finding that he should have been granted relief, protection under the convention against torture. Counsel, to ask you a question on that, if the local police are corrupt, but not the federal government, is that sufficient in the law for him to show government acquiescence? Yes, it is. So we have cases from this court like Barajas-Romero and Madrigal that make clear that an individual is able to demonstrate eligibility for protection under the convention, even if not all facets of the government are involved in either acquiescing or consenting to those actions. And so the fact that the immigration judge noted that there was an investigation, that officials went to the home to make a report on the murder, does nothing to undermine the record evidence, both his testimony and the country conditions reports, that directly demonstrate local police are, in fact, involved in collaborating with the cartel, making it clear that the government would acquiesce at a minimum to the cartel's actions. Counsel, also, did the I.J. ever make a negative credibility determination as to any part of his testimony? No, the immigration judge found that he presented credible testimony. Now, it noted that in cross-examination, he had stated two different dates as to the date on which the individuals broke into his home. He tried to explain it happened in the early hours of the morning, so it was no longer May 2nd but May 3rd. And the immigration judge, and there was also another confusion on the date, and the immigration judge found that notwithstanding his confusion, and also in part given his lack of education, that he did not hold that against him as far as credibility. Thank you. Now, the one last issue that I'd like to address very quickly is the motion to remand. There's a separate petition for review challenging the board's failure to grant the motion to remand, even though once he finally obtained legal representation, he was able to locate articles online that expressly talked about the murder in his home. And so when he presented those to the board, the board found that it denied the motion to remand, finding that those were not previously unavailable. The board conflates the issue of whether that evidence predates the hearing with the very separate question of whether an individual who is detained, who is unrepresented, has no family relationship, is able to present that evidence to the court. He had no way to access the Internet, let alone print it out. And I would note that the one instruction the immigration judge gave him, because he had on three separate occasions mentioned to the agency that there was evidence online, the one instruction he received at page 141 of the record was that anything that he obtained, he would need to translate in order to submit to the court. So here he had no meaningful opportunity to obtain this evidence until he was able to successfully obtain legal representation. So clearly this was previously unavailable and it was material. As the board even recognized, it demonstrated that he, in fact, was targeted by the cartel. Counsel, did you want to save a bit of time, keep a little powder dry for a rebuttal? I appreciate the reminder. Thank you. And next we'll hear from the Attorney General. Thank you. Counsel, there's a button that would lower that. Oh, you found it. You're a step ahead of me. I practiced before you came in. Do let me know if you can't hear me, but I can hear myself, so I think we're probably good. Good morning, Your Honors. May it please the Court. I'm Carmel Morgan on behalf of the respondent, the U.S. Attorney General. The government asks that you deny the petition for review. As to the first issue raised by the petitioner, there's substantial evidence in the record that supports the immigration judge's determination that the petitioner did not meet his burden to show that he was targeted by the cartel on account of a statutorily protected ground. Help me with the CAT claim, Counsel, because I'm looking at the IJ's analysis as the CAT claim, and the IJ made a couple of findings that appeared to me to be contrary to the record evidence, so I'd like you to address that. The first is that the IJ relied on the testimony by the respondent that he never had any problems with the government of Mexico, and that, to me, completely ignores this whole narrative about the police laughing at him when he asked for help and chasing him down and attempting to essentially kidnap him and put him in the car. The second finding that the IJ made in connection with the CAT claim is the basis of his fear is at the behest of this gang known as La Maña for having witnessed a murder, but his whole claim is not that he witnessed a murder, it's that he was targeted and they ended up killing the wrong person. So why shouldn't those two missteps, well, first of all, it appears to me to be a misstep, and if your view is to the contrary, please explain that to me, and if these were misunderstandings of his claim and a mischaracterization of the record, then why shouldn't it go back on that claim? I am going to say something contrary to your interpretation, but certainly if the court feels, as it seems you may, that the immigration judge did not appropriately consider evidence, then the correct move would be to return it to the board for reconsideration. With regard to never having had any problems in Mexico, that is the testimony that Petitioner gave, it's in the record. He didn't say he misunderstood the question, there's no indication that there were problems with the interpretation, so that it is correct from the record that that is what he stated. How is that consistent with him saying that the police laughed at him when he made the post-casino? It's not consistent, I agree. How is it consistent with his statement that police were trying to pick him up to put him in a police car, and he said that it was just because they wanted to hand him over to the cartel? Maybe that's speculative, or maybe there's no adequate evidence of that, but that wasn't really addressed by the IJ, was it? I agree on those two points, that that does seem to conflict with his earlier statement that he had no problems with the government. However, he also made other previous statements before the immigration judge. One was that when he went to the police, they told him, don't worry about it, we know you didn't have anything to do with the murder, go on home, and if we need you, we'll pick you up. At that point, he didn't say the police laughed at him or that they behaved in a threatening manner, he just said they told him they'd come get him if they had any concerns. He also said later that he approached the police, and then he changed his mind and said not the police, but the public ministry, and that the prosecutor's office, in fact, did follow up. I guess they took his concerns seriously, came out to his home, and interviewed both his father and his sister that lived on the ground floor. So although he was found credible, he has conflicting testimony as to what local officials did. Counsel, do you agree with the argument that was asserted by your colleague on the other side of the case, that if the local police acquiesce, that that's enough to show government acquiescence, even if the federal government is not acquiescing? I agree that the Madrigal case addresses that concern, and that if there's evidence that the local police would acquiesce, that could be enough to establish the burden for protection under the Convention Against Torture. I think the concern here is what do you do when you have conflicting evidence, you have the petitioner saying both that the police laughed at him and didn't want to help, and that they, in fact, were helpful and started investigating the case. Does the I.J. have any responsibility in the context you're stating to make some sort of credibility, finding that he's more credible when he says X than when he says Y? Otherwise, what do we do with this evidence if all the I.J. said was he was credible? I think it's a really difficult question. The I.J. did find him overall or generally credible, and his reservations mainly had to do with, as Petitioner's counsel stated, some confusion or discrepancies with dates. I'm not really sure what one does when you have conflicting evidence, and yet you have a finding that the petitioner is credible. The government's argument here is going to be that the petitioner did state that the local government did take steps to investigate the murder of the friend. He didn't always state that the police were laughing at him, either. He had testimony that he went to the police, and they told him to go back home, and if they needed him, they'd ask questions later. Well, that seems to be an argument in favor of a remand for the I.J. to resolve the conflicting pieces of evidence in the record. To the extent he said two apparently contradictory things, the I.J. could choose to accept one and reject the other, and so long as substantial evidence supports the I.J.'s analysis, the petition, we would have to deny the petition. But here, there's a failure to address material pieces of evidence in the record, and with an overall finding of credibility, doesn't that dictate in favor of a remand for a do-over? I agree that the immigration judge did not address those concerns head-on. One would possibly be able to assume, or possibly not, that he took those factors into account, but it's not terribly clear on the record, I would agree. But also, the government doesn't have to oppose a remand. That may be the marching orders that you have from the attorney general, in which case I'd recommend you obey the attorney general. But, I mean, the government is free, as they often do, to say we should remand this. I'm not going to say that at this time. Obviously, if the court rules that remand is necessary, there won't be any objection from the government on that point. Let me ask you another question that relates to this motion to reopen that was denied. As I understand it, it was denied because the evidence from the Internet predated the hearing and was thought to be available. But is there any law on whether when a petitioner is in custody and maybe they don't have access to the Internet, they should be held to that rule? I think the board denied the motion to reopen sort of for two reasons. One was that the information predated the hearing. But the second reason is it's just not material to the claim. He was found credible. No one's disputing that this incident at his home where someone killed happened. And, in fact, he testified a couple different times that there were articles on the Internet that mentioned his death incorrectly, but that the articles existed. So it's totally unclear how that would be impacting the outcome of his case. The information just isn't necessary. But as to your point about detainees and their access to the Internet and being held accountable, I really don't know. I did look for similar cases, and I wasn't able to find anything directly on point. I was a little troubled that the petitioner, in his actual motion to reopen, although he said he was unable to secure evidence, didn't describe specifically what steps he had taken and seems to be saying now that he didn't have access to the Internet. But that wasn't clear in the motion to reopen. Thank you, counsel. You're welcome. I could briefly address as well the due process concerns that were raised by the petitioner. It seems to me that the immigration judge asked three or four times about the motivation of the cartel in targeting the petitioner, so I don't think it's accurate that he wasn't given an opportunity to express his opinion as to the motivation. Your question about the relationship, he did state he was a cousin of his cousin, but did that raise a family as a particular social group claim necessarily, or might he have just been saying, as he had stated in his reasonable fear interview and his asylum application, that he felt perhaps the cartel was targeting him because of some information that his cousin may have shared with the cartel about him? That doesn't seem to me to raise a family claim. That's a relationship claim, but not a family relationship. It happens to be his cousin. The cousin was his roommate. If David the cousin had just been David the roommate, the circumstances would be identical, but it didn't have to do with blood ties and family. I think the immigration judge, although he didn't explicitly evaluate the case under family as a particular social group, clearly did reject the notion that the petitioner met his burden on any ground, which included particular social group, and the immigration judge did follow up with questions generally about his family, the father and the sister who lived on the ground floor. The immigration judge asked questions and confirmed that they remained safe at the same address where the friend was killed. If you have no further questions, the government asks that you deny the petition for review. Okay, Ms. Morgan, I have no further questions. Judge Collins? No, I have none. We have none. We appreciate the spirited argument. Thank you, Your Honors. Mr. Adams, do you have a short time for rebuttal? We appreciate your spirited argument, too. Thank you. I appreciate that, and I will keep it short. Respondent has no answer for the fact that the immigration judge nor the board addressed how it could be that he credibly testified that he was attacked by the police, rather the police attempted to grab him at the cartel's behest, and yet there's no government acquiescence or consent for purposes of the Convention Against Torture. Respondents don't ever address the record evidence, the country conditions reports. The record compels a finding that he was targeted by the cartel and that the police actively collaborated with the cartel in attempting to run him down to hand him over to the cartel. So the record in this case compels an instruction that the agency grant him protection under the Convention Against Torture. Now, with respect to the claim for withholding, we agree that the proceeding should be remanded for additional inquiry as the immigration judge did not address his claim. And that's clear before the record, and it's clear that the board inappropriately engaged in that claim in the first instance. Respondent seeks, in effect, to second-guess his testimony, the credibility findings, but respondents are not in a position to provide their rationale for the immigration judge's failure. The immigration judge never addressed his claim that he was targeted on account of being a cousin of his cousin. And as we pointed out in our brief, yes, he was asked two times with respect to why he was targeted, in addition to when he said he was targeted on account of being a cousin of his cousin. And both times the testimony was distracted and not followed up. In one case, the trial attorney interrupted and pointed out that he wasn't a witness of his cousin's murder, and that distracted the immigration judge, and the immigration judge did not follow up with his questions. And on the other occasion, the immigration judge got distracted and never pushed for any more response as to his initial question. Counsel, were you arguing that we should remand on the withholding? That's correct. Because of the conflicts in the record, but that we should at that same time grant the relief under CAT as opposed to remanding on both? That is our request, yes. And the other point I'd make is that there was no contradiction to say that police officials came to investigate the murder at his home, and yet later on, when he interacted with separate police officials who then had instructed him that he had better run, that they laughed at him. Those were two separate events. That's not a contradiction that in one case the police laughed at him, and in another case they did not. Okay, I think you're over your time. Thank you. I have one final question for you and Ms. Morgan. If we remand on any issue, do counsel feel it should be on a closed record, just what was previously submitted, or on an open record? If I may, I believe that the record has to be developed for purposes of the application for withholding of removal because there's been no finding addressing one way or another the claim that he was persecuted on account of his family membership. Okay, and Ms. Morgan? I think generally you would remand based on the record as it exists, but it would be up to the parties if it goes back before an immigration judge to decide the issue about what the immigration judge should consider at that point. So I would defer to the Department of Homeland Security if it's back before the immigration judge as to what they would prefer to do. Okay, thank you. I appreciate both counsel's arguments. And the Garcia-Cadet case shall be submitted.
judges: Gould, Nguyen, R. Collins